**IN THE DISTRICT COURT OF THE UNITED STATES**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**

**CIVIL NO.  1:06CV52**

| | | |
|---|---|---|
| **REBECCA GARREN LANNING,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **Vs.** | ) | **MEMORANDUM** |
| | ) | **OF OPINION** |
| **EATON CORPORATION; THE EATON** | ) | |
| **CORPORATION HEALTH AND** | ) | |
| **WELFARE ADMINISTRATIVE** | ) | |
| **COMMITTEE; and BROADSPIRE** | ) | |
| **NATIONAL SERVICES, INC.,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Plaintiff's timely filed

objections to the Memorandum and Recommendation of United States

Magistrate Judge Dennis Howell.  Pursuant to standing orders of

designation and 28 U.S.C. § 636, the undersigned referred the parties'

cross-motions for summary judgment and the Defendants' motion to strike

to the Magistrate Judge for a recommendation as to disposition.  Having

conducted a *de novo* review of those portions of the recommendation to

which specific objections were filed, the Court finds the Defendant's motion should be granted.  **28 U.S.C. § 636(b); Fed. R. Civ. P. 72.**

## I. PROCEDURAL HISTORY

The Plaintiff initiated this action for disability benefits against her former employer, Eaton Corporation (Eaton), pursuant to the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001, *et seq.*, on February 21, 2006.  She also named as Defendants the Eaton Corporation Health and Welfare Administrative Committee (Committee) which administers the employees' benefits plan[1] and Broadspire National Services, Inc. (Broadspire) which is the claims administrator for the Plan. On October 30, 2006, the parties filed cross-motions for summary judgment.  On November 16, 2006, the Defendants moved to strike portions of the Plaintiff's memorandum in support of summary judgment because it referred to matters outside the administrative record.

The Magistrate Judge entered his memorandum and recommendation on January 18, 2007.  The Plaintiff filed the following objections to that recommendation: (1) the Magistrate Judge's

---

[1] The Eaton Corporation Long Term Disability Plan (the Plan).

determination that the January 1, 2004, version of the Plan controls the Plaintiff's claim is erroneous; (2) the Magistrate Judge's determination concerning the material differences between the 1999 and 2004 Plans is erroneous; (3) the Magistrate Judge's conclusion that the Plaintiff waived her right to have the correct version of the Plan applied to her claim is erroneous; and (4) the Magistrate Judge incorrectly concluded that the denial of benefits was supported by substantial evidence.

## II. STANDARD OF REVIEW

A district court reviews objections to a memorandum and recommendation under a *de novo* standard. **28 U.S.C. § 636(b).** "'Parties filing objections must specifically identify those findings objected to. Frivolous, conclusive or general objections need not be considered by the district court.'" ***Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir.1987) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)).** Likewise, where the objecting party merely rehashes arguments previously raised in connection with the motion under advisement, the district court is not obligated to undertake a *de novo* review. ***Eaker v. Apfel*, 152 F.Supp.2d 863 (W.D.N.C. 1998),** *aff'd*, **217**

**F.3d 838 (table), 2000 WL 950429 (4th Cir. 2000).** Where specific

objections are not filed, a district court should give such review to the

memorandum and recommendation as it deems appropriate. ***Thomas v.***

***Arn*, 474 U.S. 140, 152 (1985).**

## III.  SUMMARY JUDGMENT AND ERISA STANDARDS OF REVIEW

The Plaintiff has not objected to the Magistrate Judge's statements of

the proper standards of review.  The parties agree that disposition of this

case is appropriate by summary judgment. **Memorandum and**

**Recommendation, filed January 18, 2007, at 15-16.**

The Plaintiff also has not objected to the Magistrate Judge's

statement of the standard of review in an ERISA case.  The undersigned,

therefore, also adopts that standard.  "If . . . the language of the plan

confers discretion on the administrator to determine eligibility, then a court

reviews the decision to deny benefits for abuse of discretion.  This

deferential standard of review requires that a reviewing court not disturb an

administrator's decision if it is reasonable, even if the court would have

reached a different decision." ***Donovan v. Eaton Corp. Long Term***

***Disability Plan*, 462 F.3d 321, 326 (4th Cir. 2006) (internal citations**

**omitted).** For the purposes of this case, if the decision to deny benefits was not supported by substantial evidence, then the decision was unreasonable and thus was an abuse of discretion. *Id.*

## IV.  THE PLAINTIFF'S OBJECTIONS

**A.     Which version of the Plan controls the Plaintiff's case.**

The Plaintiff worked from September 1980 through June 1999 as an assembly tester for Eaton.  Due to osteoarthritis, the Plaintiff stopped working in June 1999 and received short term disability benefits from June through November 1999.  On February 7, 2000, the Plaintiff was approved for an initial 24 month period of long term disability benefits, effective as of November 29, 1999, because she was not able to perform her job at Eaton.  **Exhibit A, Administrative Record (A.R.),** *attached to* **Defendants' Memorandum in Support of Summary Judgment, filed October 30, 2006, at 0102.**[2]  In June 2001, the Plaintiff was approved for continuous long term disability benefits because she was unable to perform any work.  In 2004, the Defendants terminated the Plaintiff's long

---

[2]The Court will cite to the Administrative Record only where such citations are not included in the Memorandum and Recommendation.

term disability benefits.  After exhausting the administrative appeals process, the Plaintiff brought this action.

The Plaintiff claims that she was awarded continuous long term disability benefits pursuant to a 1995 Plan; however, she has attached only "Part 1" of the Plan which "sets forth the administrative, fiduciary and other provisions applicable to the overall administration of the Plan[.]" **Exhibit 3B, *attached to* Plaintiff's Memorandum in Support of Summary Judgment, filed October 30 2006, at 1.**  "Part 2" of that Plan, which contained the actual plan summary, is not included and there is no definition of "covered disability" within "Part 1."[3]

The Plaintiff also claims that she received continuous long term disability benefits pursuant to the plan in place as of January 1, 1998.  The

---

[3] These documents were attached to the Plaintiff's memorandum in support of summary judgment as exhibits.  The Defendant moved to strike these exhibits because they were not included in the Administrative Record.  While the Defendant is correct that review in an ERISA disability case is normally limited to the evidence contained within the Administrative Record, the Magistrate Judge considered these documents for purposes of finality and the Defendant has not objected to that portion of the Memorandum and Recommendation.  Thus, this Court also considers these documents.

Summary Plan Description (SPD) for Eaton's long term disability benefits

plan effective January 1, 1998,[4] defined a "covered disability" as follows:

> during the first twenty-four months of such disability, inclusive of any period of short term disability, you are totally and continuously unable to perform the essential duties of your employment with the Company, or the duties of any suitable alternative position with Eaton Corporation or one of its subsidiaries; and
>
> during the continuation of such total disability following the first twenty-four months, you are totally and continuously unable to engage in any occupation or perform any work for compensation or profit for which you are, or may become, reasonably well fitted by reason of education, training or experience – at Eaton Corporation or elsewhere.
>
> Your physician will be provided with forms for purposes of certifying as to the extent of disability.  The determination of whether or not you have a covered disability under the Plan is made by the Claims Administrator.

**Exhibit 3C,** *attached to* **Plaintiff's Memorandum, at 9.**  Thus, Eaton

provided three forms of disability to plan participants: (1) an initial period of

short term disability; (2) an initial period of 24 months of long term disability

during which the participant must not be able to perform her job at Eaton;

and (3) following that 24 months of initial disability, continuing long term

---

[4] Both parties have referred to this as the "1999 Plan," presumably because the Plaintiff was found to have been initially disabled as of November 29, 1999.  No one has placed a copy of a 1999 disability benefits plan in the record here or included it in the Administrative Record.

benefits during which the participant must not be able to perform any work.[5]

The 1998 Plan also required that the employee be "under the continuous care of a physician who certifies that you are totally disabled." *Id.* It made clear, however, that the final determination of disability was made by the Claims Administrator. *Id.* The 1998 Plan also provided for benefits to terminate, among other reasons, when "you no longer have a covered disability, as defined by the Plan; . . . the first day for which you are unable to provide satisfactory evidence of a covered disability; [or] you do not follow the treatment plan ordered by your physician and you have been receiving long term disability benefits for 18 months or longer." *Id.* **at 15.** The Plan also contained a requirement for updated medical information.

> If your claim is approved by the Claims Administrator, you will be required to periodically submit updated medical information regarding your continuing disability. . . . The Claims Administrator may require you, from time to time, to undergo an independent medical examination and/or a functional capacity test. If you do not cooperate with this request[,] . . . your benefits will be discontinued.

---

[5] This structure of the Plan has not changed in any subsequent plans at issue in this case.

*Id.* **at 17.**

The 1998 Plan contained a provision that "[t]he Company may amend the provisions of the Plan at any time[.]" *Id.* **at 24.** In fact, the first page of the summary recites,

> **YOU SHOULD BE AWARE THAT THE COMPANY RETAINS THE RIGHT TO SUBSTITUTE OTHER COVERAGE, CHANGE CONTRIBUTIONS OR AMEND, CHANGE, MODIFY, OR COMPLETELY TERMINATE THIS PLAN FOR ANY OR ALL GROUPS OF PARTICIPANTS AT ANY TIME. NEITHER THIS BOOKLET NOR ANY WRITING REGARDING THIS PLAN . . . SHALL GRANT OR CONFER ANY VESTED OR OTHER RIGHTS TO ANY EMPLOYEE . . . BENEFIT RECIPIENT OR ANY OTHER PERSON FOR FUTURE BENEFITS BEYOND AMOUNTS PAYABLE FOR PERIODS OF TIME WHEN THIS PLAN IS IN EFFECT.**

*Id.* **at 1.**

The SPD for Eaton's long term disability benefits plan effective January 1, 2000, contained the same warning. **Exhibit 3D, *attached to Plaintiff's Memorandum.*** That Plan also defined a covered disability in the same manner as the 1998 Plan, that is, for the initial 24 month period of disability the employee must be unable to perform her job at Eaton; thereafter, she must be unable to perform any work. *Id.* **at 10.** The January 1, 2000, Plan required that the employee be "under the continuous care of a physician who verifies, to the satisfaction of the Claims

Administrator, that you are totally disabled." *Id.* The 2000 Plan also provided for benefits to terminate, among other reasons, when "you no longer have a covered disability under the Plan, as determined by the Claims Administrator; . . . the first day for which you are unable to provide satisfactory evidence of a covered disability; [or] you do not follow the treatment plan ordered by your physician." *Id.* **at 16.** The 2000 Plan also included a definition for "objective findings" of disability.[6]

> Objective findings of a disability are necessary to substantiate the period of time your physician indicates you are disabled. Objective findings are those that can be observed by your physician through objective means, not just from your description of the symptoms. Objective findings include: physical examination findings (functional impairments/capacity); diagnostic test results/imaging studies; diagnosis; X-ray results; observation of anatomical, physiological or psychological abnormalities; and medications and/or treatment plan.

*Id.* **at 18.**

The SPD for the January 1, 2004, Plan contains the same warning concerning amendment of the Plan as the previous versions. **A.R. at 0023.** It contains the same definitions for eligibility, covered disability and termination of benefits. *Id.* **at 0032, 0035.** That is, the 2004 Plan

---

[6] As will be discussed *infra*, the Court does not find that the definition contained within the 2000 Plan constitutes a new or different standard than applied in previous plans.

contained the same two tiered structure; during the initial 24 month period, the Plaintiff had to be unable to perform her job at Eaton, and after that initial 24 month period, she had to be unable to perform any work. ***Id.*** And, it contains the same requirement for objective findings of disability. ***Id.* at 0037.**

The Plaintiff claims that her disability is determined pursuant to the terms of the 1995 and 1998 Plans, not the 2000 or subsequent Plans. **Plaintiff's Objections to Memorandum and Recommendation, filed February 1, 2007, at 2 ("After Plaintiff became disabled, Defendants made material amendments to the plan which appeared in versions of the plan dated January 1, 2000[.]").** She objects to the Magistrate Judge's refusal to make such a finding.

From June through November 1999, the Plaintiff received short term disability benefits which are not part of the long term disability benefits plan. **Plaintiff's Exhibit 3D, at 9.** She did not receive long term benefits until February 17, 2000, when she was notified that her application for the initial period of long term disability benefits had been approved because she was "currently disabled from performing the duties of your regular job." **A.R. at 0096.** This letter does not specify the version of the Plan pursuant

to which benefits were awarded.  According to the language of the Plan, the benefits were made effective as of November 29, 1999, because that was the day following the expiration of her six month period of short term disability.  **Exhibit 3D, *supra,* at 14 ("While this Plan is in effect, long term disability benefit payments commence on the day immediately following the expiration of a six-month period during which you have been absent from work due to a covered disability.").**  Thus, the Plaintiff received her initial period of long term disability benefits under the January 2000 Plan.

Nor is the Court able to divine any meaningful difference between the language of the 1998, 2000 and 2004 Plans.  All three Plans required that during the initial 24 month period of long term disability the Plaintiff must have been unable to perform her job at Eaton.  All three Plans required that after that initial 24 month period, the Plaintiff could continue to receive long term disability benefits but only if she could not perform any work.  The only issue is the Plaintiff's contention that the 2000 version of the Plan, which contained an objective medical evidence provision, should not have been applied to her continuous period of disability in 2004.  However, this standard was applied to the Plaintiff in April 2001 when the Claims

Administrator wrote to her, "We are in the process of verifying the objective medical documentation already received[.]" **A.R. at 0126.** In March 2002, the Claim Administrator also required the Plaintiff to submit objective medical documentation in the form of a functional capacity evaluation, diagnostic testing and results and the attending physician statement. **A.R. at 0128.** This procedure was repeated in June 2003. **A.R. at 0131-32.** The Plaintiff had no complaint with the application of the objective medical findings provision to her while she continued to be deemed disabled.

Moreover, the Court can perceive no difference between the standard applied in the 2000 Plan and that of the 1998 Plan. Both plans required the long term disability benefits recipient to submit objective findings in the forms of "updated medical information regarding your continuing disability," and "an independent medical examination and/or functional capacity test." The fact that the 2000 Plan set forth a separate definition of objective findings did not alter the fact that the 1998 Plan also required a recipient to submit objective findings in order to continue to receive benefits.

> Under the Plan, eligibility for LTD Benefits is predicated upon a plan participant having a non-excluded disability. The Plan defines "disability," during the first [24] months after a claim is filed, as "the . . . inability. . . of a Participant to engage in his

regular occupation with the Employer."  After [24] months of disability, however, the Plan redefines the term, in a more restrictive manner, to mean the "complete inability . . . of a participant to engage in any gainful occupation or employment[.] . . .  The Plan provides that LTD Benefits shall terminate, *inter alia*, when the "Plan Manager determines . . . [that] the Disabled Participant no longer satisfies the [Plan's] definition of Disability."

. . .

[The Plaintiff] suggests that the Plan Administrator abused its discretion in denying her LTD Benefits because she had been disabled under the terms of the Plan for [24] months.  In essence, she contends that once [the Plan] determined that she was disabled under the Plan, it was estopped from altering its decision.  It is well-established, however, that no vested right to benefits accrues under an employee welfare benefit plan absent a clearly stated obligation to this effect in the plan's policies.  The terms of the Plan under which [the Plaintiff] received LTD Benefits do not create any vested benefit right.  In fact, the opposite is true.  The Plan explicitly requires the [continued] submission of evidence to the Plan Administrator to substantiate the continued existence of a disability, and it provides for the cessation of LTD Benefits whenever such evidence fails to do so.

***Webster v. Black & Decker (U.S.), Inc.***, **33 F. App'x 69, 72, 75 (4th Cir. 2002) (internal citations omitted).**   Indeed, the Plaintiff's argument amounts to a claim that once she was approved for the initial 24 month period of long term disability benefits in February 2000, the Plan could never terminate those benefits.  This is in direct conflict with the plain language of every plan in existence during the time period of this action.

> [T]here exists a presumption against the vesting of benefits unless language in the plan establishes ambiguity on the issue. If benefits have not vested, the plan participant does not have an unalterable right to those benefits. The fact that benefits have not vested suggests that the plan is malleable and the employer is at liberty to change the plan and thus change the benefits to which a participant is entitled. Since the employer can change the plan, then it must follow that the controlling plan will be the plan that is in effect at the time a claim for benefits accrues. [A] claim accrues at the time benefits are denied. Therefore, . . . the controlling plan must be the plan in effect at the time the benefits were denied.

**Hackett v. Xerox Corp. Long-Term Disability Income Plan**, 315 F.3d 771, 774 (7th Cir. 2003) (internal citations omitted); **accord, Grosz-Salomon v. Paul Revere Life Ins. Co.**, 237 F.3d 1154 (9th Cir. 2001) (controlling plan is the one in effect at the time the participant's claims are denied by the plan administrator); **McWilliams v. Metropolitan Life Ins. Co.**, 172 F.3d 863 (table), 1999 WL 64275, *2 (4th Cir. 1999) ("[A]n ERISA cause of action based on the denial of benefits accrues at the time benefits are denied, and the plan in effect when the decision to deny benefits is controlling."); **Hall v. Nat'l Gypsum Co.**, 105 F.3d 225 (5th Cir. 1997).[7]

_____

[7] The cases on which the Plaintiff relies are distinguishable. In _Wheeler v. Dynamic Eng'g, Inc._, 62 F.3d 634 (4th Cir. 1995), the plaintiff had received pre-certification for a series of treatments for breast cancer which constituted one procedure. After the first treatment, the employer

Thus, the Plan in effect in 2004 is the controlling plan for purposes of terminating the Plaintiff's benefits.[8]  However, this finding is of no moment

---

amended the plan to eliminate coverage for that procedure.  The Fourth Circuit found that the plaintiff had already incurred the expense related to the procedure, and therefore, the amendment could not be used to defeat payment for the procedure.  In *Doe v. Group Hospitalization & Med. Servs.*, 3 F.3d 80 (4th Cir. 1993), the Circuit actually held that health care benefits are not vested and may be modified or amended at any time.  But in that case, the issue was not whether an amendment should be retroactively applied.  The issue was whether a particular treatment was excluded under the amendment or covered under a different provision of the policy.  *Kelly-Hicks v. Paul Revere Ins. Co.*, 1998 LEXIS 12530 (W.D.N.C. 1998), involved a plan which did not reserve discretion to the plan administrator and, therefore, is inapposite.  In *Grass v. Eastern Assoc. Coal LLC*, 2006 WL 2527810 (S.D. W. Va. 2006), the Court commented in a footnote that the plaintiff's deadline for giving written notice of disability including a certification by a physician was the deadline in the plan in effect at the date he applied for benefits.  It is unclear how that comment impacts this case.  *Shelton-Tilley v. Prudential Ins. Co. of America*, 168 F.Supp.2d 584 (W.D. Va. 2001), merely states the obvious, that is, when a participant applies for disability benefits, the version of the plan in effect as of the date of application applies.  It does not hold that particular version of the plan applies years later to a determination to terminate benefits.  *Gibbs v. Cigna Corp.*, 440 F.3d 571 (2d Cir. 2006), involved a plan in which the participant had vested benefits and a plan which provided that any subsequent amendment could not modify vested benefits.  "Gibbs was vested in his right to disability benefits prior to the amendment of the Plan."  *Id.* **at 577.** Moreover, the amendment related to the calculation of benefits, not termination thereof due to lack of disability.  It is, therefore, inapposite. The same reasoning applies to the other cases cited.

[8] For purposes of the initial 24 month period of disability benefits, the Plaintiff's qualification as having a covered disability was determined pursuant to the 2000 Plan.  For purposes of the continued period of benefits after the initial 24 month period, the Plaintiff's qualification as having a continued covered disability was determined pursuant to the 2000

because each plan at issue, the 1998, 2000 and 2004 Plans, provided for the same two-tiered structure of disability benefits, that is, an initial 24 month period during which the recipient could not perform her work followed by a continuous period of benefits during which the recipient could not perform any work. The definition of disability was identical in each of these plans. Each plan provided that benefits would terminate upon the expiration of the disability. Each plan provided for continued submission of objective medical findings and specifically noted that the final determination was made by the Claims Administrator. And, each plan provided that the Plan could be amended at any time. Indeed, the Plaintiff acknowledges that "Eaton had a right to review her claim periodically to determine whether she still met the 1999 plan's definition of disability[.]" **Plaintiff's Objections, at 6.** The definition of disability in the 1998 Plan was identical to that of the 2000 and 2004 Plans. Thus, the Plaintiff has admitted that Eaton had a right to review her continuing disability.

---

Plan, if there was no plan dated January 1, 2001. No such plan has been placed in evidence.

**B.** **The determination of the difference between the 1998 and 2004 Plans.**

The Plaintiff next claims that the 2000 Plan modified the "treating doctor verification of disability."

The 1998 Plan contained the following requirement:

Your physician will be provided with forms for purposes of certifying as to the extent of disability. *The determination of whether or not you have a covered disability under the Plan is made by the Claims Administrator.*

**Plaintiff's Exhibit 3C, at 9 (emphasis added).**

The 2000 Plan required that the employee be "under the continuous care of a physician who *verifies, to the satisfaction of the Claims Administrator, that you are totally disabled.*" **Plaintiff's Exhibit 3D, at 10 (emphasis added).**

The language of both plans makes it clear that the final decision is that of the Claims Administrator, not the treating physician. The Plaintiff's argument that prior to the 2000 Plan all that was required to obtain disability benefits was the verification of a treating physician is disingenuous.

Next, as noted above, the Plaintiff claims that the addition of the objective evidence provision was an amendment which was improperly

applied to her when the Plan determined to terminate her benefits in 2004.

As previously noted, the Court finds that the 1998 Plan contained a

requirement that a recipient was obligated from time to time to submit

objective medical findings to support the claim of disability. Among the

information required to be submitted was (1) proof that the recipient was

under the continuous care of a physician; (2) who would certify disability;

(3) evidence satisfactory to the Claims Administrator of continuing

disability; (4) updated medical information; (5) independent medical

evaluations; and (5) functional and capacity testing.

The language of the 2000 Plan expanded the scope of what would be

considered objective medical findings. Among the items cited as examples

are "physical examination findings (functional impairments/capacity),"

which were included in the 1998 Plan; diagnostic test results/imaging

studies, included under the 1998 Plan as "independent medical

evaluations;" diagnosis; x-ray results; observation of anatomical,

physiological or psychological abnormalities; and medications and/or

treatment plan, all of which are included in "updated medical information" in

the 1998 Plan.

Moreover, in 2001 and continuing thereafter, the Claims Administrator required the Plaintiff to submit objective medical findings as part of the review of her continuing disability.  The Plaintiff had no complaint about this until her disability was deemed to have terminated.  As noted above, the 2004 Plan controls the determination of whether the Plaintiff continued to be disabled because it was that Plan under which her claim was denied and thus accrued.  ***Hackett, supra; Grosz-Salomon, supra; McWilliams, supra; Hall, supra.***  But the Court's ruling is two-fold: although the 2004 Plan controlled the termination of benefits, it was not substantially or materially different from previous plans.

**C.     The issue of substantial evidence to support denial of disability.**

The Plaintiff objects to the Magistrate Judge's finding that substantial evidence supports the decision of the Plan Administrator that the Plaintiff no longer qualifies for continuing long term disability benefits.  In so doing, she incorporates her previous arguments made in her motion for summary judgment and basically disagrees with the Magistrate Judge's conclusions.

> A general objection, or one that merely restates the arguments previously presented is not sufficient to alert the court to alleged errors on the part of the magistrate judge.  An "objection" that does nothing more than state a disagreement

with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an "objection" as that term is used in this context.

***Aldrich v. Bock***, **327 F.Supp.2d 743, 747 (E.D. Mich. 2004);** ***North***

***Carolina ex rel. Ayers v. Sellers***, **2006 WL 3390638 (W.D.N.C. 2006).**

This is insufficient to warrant *de novo* review. ***Id.***; ***Eaker v. Apfel, supra***.

After a lengthy discussion of the *Donovan* case, *supra*, the Plaintiff

concludes with the following objections: (1) "the fact that Plaintiff Rebecca

Lanning can engage in some limited activities does not mean that she can

consistently attend work, day in and day out;" (2) "the FCE [functional

capacity evaluation] is not substantial evidence that Plaintiff can work on a

regular and sustained basis;" (3) "the findings documented in Plaintiff's

September 20, 2004 MRI, the rheumatological findings of Dr. Ellison Smith

from August 2004 forward, and the findings of kidney specialist Dr. Brian

Ling from August 2005 forward are substantial evidence of Plaintiff's

continuous disability from July 1, 2004 when Defendants cut off her

benefits;" and (4) Dr. William Hamilton has opined that Plaintiff has been

*continuously* disabled under the Plan's "any work" definition . . . since at

least December 2001[.]" **Plaintiff's Objections, at 17-18.**

The Court has reviewed the entire Administrative Record, including the evidence submitted by the Plaintiff in connection with her administrative appeal.  There is no doubt that the Plaintiff suffers from a myriad of ailments.  However, the record shows that almost all of them are well controlled with medication, *albeit* she requires persistent monitoring and adjustment.  In the latter part of 2002, the Plaintiff reported to her physician that she had lost weight and was "very excited about how much better she is feeling."  **A.R. at 0343.**  She appears to have been seen by a physician only twice in 2003 and during one of those visits reported she was swimming five times a week, "is feeling better for it and going to Weight Watchers."  *Id.* **at 0341.**  In June 2004, she reported she had been working out.  *Id.* **at 0351.**  In September 2004, Dr. Smith reported that her symptoms of low back pain had been "stable for a couple of years."  *Id.* **at 0403.**  In June 2005, her physician noted that her last evaluation for back surgery "did not recommend intervention."  *Id.* **at 0751.**  Moreover, during the summer of 2005, the Plaintiff had physical therapy involving water therapy during which she told her therapist she had been "feeling the best that she has felt."  *Id.* **at 0791.**  The therapist reported dramatic improvement; however, the Plaintiff did not want to continue the therapy.

This was a pattern that had been repeated some years earlier. Throughout her period of disability, the Plaintiff remained capable of taking care of her daily living activities and continued to drive. She reported going out to eat almost every day because it was easier than cooking but then reported an inability to sit for more than a few minutes. And, no physician ordered aggressive testing concerning the Plaintiff's persistent complaints of back pain.

> In considering whether [Eaton] abused its discretion, "[this Court] must affirm if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." The essence of the inquiry is whether the decision is supported by substantial evidence. [The Court] consider[s] "both the quantity and quality of evidence" in determining whether substantial evidence supports the decision to deny benefits. Substantial evidence is "more than a scintilla, but less than a preponderance."

***Rutledge v. Liberty Life Assurance Co. of Boston*, ___ F.3d ___, 2007 WL 939698 \*4 (8th Cir. 2007) (quoting *Groves v. Metro. Life Ins. Co.*, 438 F.3d 872, 875 (8th Cir. 2006) and *Ferrari v. Teachers Ins. & Annuity Ass'n,* 278 F.3d 801, 807 (8th Cir. 2002)) (other internal citations omitted).** In this regard, Eaton considered the opinions of the Plaintiff's numerous treating physicians and conducted multiple reviews of her entire medical file. *Id.* The plan administrator is not required to accept

the opinion of the Plaintiff's treating physicians over those of its reviewing physicians. *Id.*; *accord, Black & Decker Disability Plan v. Nord*, **538 U.S. 822 (2003).** The plan administrator found that the Plaintiff's treating physicians failed to cite to objective medical evidence in support of their conclusions that she is totally disabled. Indeed, her physicians did routinely make the blanket assessment that due to her many illnesses, she was totally disabled. And, the reviewing physicians uniformly opined that they would have preferred to have additional diagnostic results to consider. The Court finds that the progress notes from the Plaintiff's physicians are internally inconsistent in that they report progress, stability, lack of pain, increased mobility with exercise, and feeling well. Yet, her physicians opined she was totally disabled. *Groves, supra.*

The Court finds on the record before it that substantial evidence supports the decision of the plan administrator.

## V. ORDER

**IT IS, THEREFORE, ORDERED** that the Defendant's motion for summary judgment is hereby **GRANTED** and its motion to strike is hereby **DENIED**.

**IT IS FURTHER ORDERED** that the Plaintiff's motion for summary judgment is hereby **DENIED**.

A Judgment is filed herewith.

Signed: April 24, 2007

Lacy H. Thornburg
United States District Judge